DAVID G. BANES, F0171
O'CONNOR BERMAN HOREY & BANES, LLC
Suite 201, Marianas Business Plaza
P.O. Box 501969
Saipan, MP 96950
Tel.: (670) 234-5684
Fax: (670) 234-5683
Email: dbanes@pacificlawyers.law

*Attorneys for Plaintiff Alyssa J. Nunez*

FILED
Clerk
District Court

JAN 1 0 2020

for the Northern Mariana Islands
By_____
(Deputy Clerk)

IN THE UNITED STATES DISTRICT COURT
FOR THE
NORTHERN MARIANA ISLANDS

| | |
|---|---|
| ALYSSA JADE NUNEZ, | CASE NO. CV 20-00001 |
| Plaintiff, | |
| vs. | COMPLAINT |
| THE UNITED STATES OF AMERICA, THE UNITED STATES DEPARTMENT OF THE INTERIOR, THE NATIONAL PARK SERVICE, and PACIFIC-WEST REGION OF THE NATIONAL PARK SERVICE, | |
| Defendants. | |

COMES NOW Plaintiff Alyssa J. Nunez ("**Nunez**"), by and through counsel and for her Complaint, states and alleges as follows:

**JURISDICTION**

1. This Court has jurisdiction over this matter pursuant to the Federal Tort Claims Act, 28 U.S.C. § 1346(b).

1

## VENUE

2. Venue is proper in this District pursuant to 28 U.S.C. §1402(b) because this is a tort claim against the United States arising under 28 U.S.C. § 1346(b), and the act or omission complained of occurred in this District.

## PARTIES

3. Nunez is an adult U.S. citizen residing in Saipan, CNMI.

4. At all times relevant, the United States Department of the Interior, acting through the National Park Service ("**NPS**"), and specifically, through the Pacific-West Region division of the National Park Service ("**NPS PWR Division**"), was a "Federal agency" as within the meaning of 28 U.S.C. §2671.

## FACTS

5. For over 30 years, NPS PWR Division has been the operator of the American Memorial Park (the "**Park**") located in Garapan, Saipan, CNMI, and exercised control over the Park.

6. During those years, NPS PWR Division has been operating the Park using the concept of a "living monument" that offers various activities to people living in the community, such as jogging, picnicking, fishing, water sports, tennis, and bicycling.

7. In May 2018, Marianas Visitors Authority ("**MVA**"), a government entity of the Commonwealth of the Northern Mariana Islands ("**CNMI**") and NPS PWR Division jointly organized and hosted the 20th Annual Taste of the Marianas International Food Festival & Beer Garden (the "**Event**") at the Park.

8. The Event was part of NPS PWR Division's program of operating the Park as a living monument.

9. For the Event, a stage was set up in the Park, on the northern side of Coral Tree Avenue, on the other side of Coral Tree Avenue.

10. There was a grassy area between the back of the stage and the northern boundary of Coral Tree Avenue.

11. This grassy area was a part of the Park.

12. It was typically used as a parking area throughout the year by visitors of the Park.

13. Upon information and belief, all the employees of NPS PWR Division knew or should have known this typical use of the grassy area.

14. Between the grassy area and the stage for the Event, there were wires extending between low cement posts at a height that was about 1 to 2 feet above the ground.

15. Upon information and belief, those wires and the low cement posts had been put up by NPS PWR Division long before the Event.

16. The wires presented a significant tripping hazard to visitors of the Park.

17. Upon information and belief, long before the Event, all the employees of NPS PWR Division knew or should have known that those wires presented a significant tripping hazard to visitors of the Park.

18. Upon information and belief, in 2018, when MVA and NPS PWR Division jointly hosted the Event, all the employees of NPS PWR Division knew or should have known that those wires presented a significant tripping hazard and therefore a significant risk of personal injuries, to people who, having parked their cars in the grassy area behind the stage, were going to walk towards the stage to attend the Event, and those who, having attended the Event, were going to walk back to the grassy area to their cars.

19. All the employees of NPS PWR Division knew or should have known that this tripping hazard would increase drastically when it was dark because the grassy area was poorly lit in the evening.

20. However, NPS PWR Division did not remove the wires, or put up any warning sign to warn people of the tripping hazard created by the wires, or ward off the entire surrounding area to prevent people from walking across where the wires were, or install any temporary lighting in the area, or at least place an employee nearby to warn people of the tripping hazard and guide them away from the wires.

21. On or about May 19, 2018, Nunez went to attend the Event with her family members.

22. They arrived at the American Memorial Park by car, and their car was parked in the grassy area between the back of the stage and the northern boundary of Coral Tree Avenue.

23. After attending the Event, Nunez and her family members walked towards the grassy area to get back to their car.

24. At that time, it was dark, and the grassy area was poorly lit.

25. While walking, Nunez tripped over one of the wires.

26. She fell forward and caught her fall with her arms.

27. As a result of her fall, Nunez fractured the elbow of her right arm and experienced extreme pain.

28. Nunez had to travel to the Philippines to undergo surgery.

29. After the surgery, she underwent physical therapy.

30. She needs at least another surgery in the future, and may need further medical care.

31. The range of motion of her arm is likely to be permanently reduced as a result of her injuries.

32. Nunez has complied timely with 28 U.S.C. § 2401(b) by providing notice of her claim to NPS regarding her injuries and damages that were tortiously caused by the Defendants in March 2019.

33. In her notice, Nunez claimed damages in the amount of $500,000.00.

34. To date, the Defendants have failed to make any disposition of Nunez's claim.

35. All conditions precedent to filing this lawsuit have been satisfied (or otherwise waived).

## FIRST CAUSE OF ACTION – NEGLIGENCE

36. Nunez re-alleges and incorporates paragraphs 1 through 35 as if restated in full here.

37. At the time Nunez tripped over the wire at the Park, the Defendants operated the Park and had control over the Park.

38. The tripping hazard associated with the wire was created by the Defendants.

39. Nunez, as an attendee of the Event, was an invitee of the Defendants.

40. The Defendants owed a duty of reasonable care to Nunez.

41. They breached this duty by (among other negligent actions and omissions):

   a. Failing to remove the wires;

   b. Failing to put up a warning sign to warn people of the tripping hazard created by the wires;

   c. Failing to ward off the entire surrounding area to prevent people from walking across where the wires were;

   d. Failing to install temporary lighting in the area sufficient to allow people to notice the wires in advance; and

e. Failing to place someone nearby to warn people of the tripping hazard and guide them away from the wires.

42. As a direct and proximate result of their breach of its duty of reasonable care owed to Nunez, Nunez fell and suffered personal injuries, including a broken elbow.

43. As a direct and proximate result of their breach, Nunez suffered pain and suffering, mental anguish, loss of enjoyment of life, medical expenses and other expenses related in seeking off-island treatment, and will suffer additional injuries and losses in the future because she has not yet fully recovered from her injuries (and it is likely the injuries will permanently impact her life).

44. At all times relevant, the action or inaction of the employees of NPS PWR Division was within the scope of their office or employment.

45. Therefore, the Defendants are liable to Nunez for damages in an amount to be proven at trial, up to the maximum amount permitted by law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief as follows:

a. For compensatory damages for economic and non-economic injuries and losses, including without limitation, pain and suffering, mental anguish, loss of enjoyment of life, medical expenses and other expenses related in seeking treatment, and loss of earnings, in an amount to be proven at trial, up to the maximum amount permitted by law;

b. For such other and equitable relief as this Court deems just and proper.

Date: January 8, 2020.

_____
/s/
David G. Banes (F0171)

M:\David Banes\Civil Cases\4415-01 Alyssa Jade Nunez v MVA\Drafts\Finalized\201008 - Complaint (against NPS).doc

6